# In the United States Court of Federal Claims

No. 18-1908C

(Filed Under Seal: April 4, 2019)
(Reissued for Publication: April 17, 2019)[1]

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| VETERANS ELECTRIC, LLC, | * |
| Plaintiff, | * |
| v. | * Pre-award Bid Protest; Motion for Judgment on the Administrative Record; Rule 52.1; Agency's Competitive Range Decision. |
| THE UNITED STATES, | * |
| Defendant. | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Andrew R. Newell*, Whitcomb, Selinsky, McAuliffe P.C., Denver, Colorado, for Plaintiff.

*Christopher L. Harlow*, Trial Attorney, with whom were *Joseph P. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Deborah A. Bynum*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., and *Brian R. Reed*, Procurement Counsel, Office of General Counsel, United States Department of Veterans Affairs, for Defendant.

OPINION AND ORDER

WHEELER, Judge.

In this pre-award bid protest, Plaintiff Veterans Electric, LLC challenges the Department of Veterans Affairs' ("DVA") evaluation of Veterans Electric's proposal and decision to exclude it from the competitive range. Plaintiff's protest poses two questions: (1) whether DVA's evaluation of Veterans Electric's proposal was arbitrary, and (2) whether DVA arbitrarily excluded Veterans Electric from the competitive range.

---

[1] The Court issued this decision under seal on April 4, 2019 and invited the parties to submit proposed redactions of any proprietary, confidential, or other protected information on or before April 11, 2019. None of the parties proposed any redactions. Thus, the Court reissues the opinion in full.

1

The parties have filed cross-Motions for Judgment on the Administrative Record, pursuant to Rule 52.1 of the Court. For the reasons explained below, the Court DENIES Veterans Electric's motion, and GRANTS the Government's cross-motion.

Background

A. The Solicitation

On February 5, 2018, DVA issued a solicitation for a Multiple Award Task Order Contract, Solicitation No. 36C52-18-R-0104, relating to construction services at the Clement J. Zablocki VA Medical Center in Milwaukee, Wisconsin. AR 51. The solicitation contained one task order to be addressed in offeror proposals—the first construction project to be awarded under the contract (designated the "seed project"). After contractors submitted proposals, the solicitation called for DVA to narrow the field of offerors to those deemed most highly qualified based on the evaluation of their proposals. AR 107-08. DVA would then ultimately award the contract to one of these remaining offerors within this "competitive range." Id.

DVA planned to evaluate proposals based on five factors identified in the solicitation: company experience, project management, safety plan, past performance, and price. The price factor included two sub-factors: reasonableness and realism. AR 105. Reasonableness refers to whether the offeror's quoted price is at or around fair market value (the price "a prudent person would pay in a competitive business environment"); price realism reflects an offeror's understanding of the project generally. AR 107.

The agency's Source Selection Evaluation Board ("SSEB") evaluated the "technical factors" of company experience, project management, and safety plan of each candidate's proposal using an adjectival assessment rating of "exceptional," "good," "satisfactory," "marginal," or "unsatisfactory." AR 19. Under past performance, the agency assessed the level of confidence in the contractor's ability to perform the contemplated work. DVA rated proposals as posing "low performance risk," "moderate performance risk," "high performance risk," or "unknown performance." AR 19. In assessing price, DVA used each proposal's bid for the seed project to measure realism and reasonableness. AR 20, 2125. DVA then ranked proposals based on the ratings given in each category. The solicitation explained how DVA would weigh each factor against the others: "[a]ll non-price factors are of equal importance and, when combined, are significantly more important than price." AR 105.

B. The Competitive Range

Fourteen offerors submitted proposals. AR 2121. DVA reviewed the proposals, assigned ratings based on the evaluation criteria outlined above, and established a competitive range consisting of the seven highest-rated offerors. AR 2121-38. Seven

2

offerors were excluded from the competitive range in this process.[2] Veterans Electric fell into the latter category. The SSEB found Veterans Electric's technical factors to be substandard; it gave Veterans Electric's company experience and project management "marginal" ratings and determined its safety plan to be "unsatisfactory." AR 2132-33. DVA determined that Veterans Electric's past performance posed "low risk." AR 2133. Veterans Electric submitted the seventh lowest price quote for the seed project, and DVA found its price to be both realistic and reasonable. AR 2125, 2133. Based on these ratings, DVA determined that Veterans Electric's "proposal contained multiple deficiencies and significant weaknesses and lacked depth and substance." AR 2137. Veterans Electric's proposal was therefore "excluded from the competitive range because it was not among the most highly rated proposals and for the purpose of efficiency." Id.

   C. The Present Dispute

Veterans Electric alleges multiple shortcomings in DVA's assessment of Veterans Electric's proposal and competitive range determination. Plaintiff points to ambiguities in the solicitation and criticizes what it characterizes as DVA's overly technical evaluation of its proposal. Veterans Electric adds that DVA improperly measured Veterans Electric's proposal using undisclosed criteria and unreasonably labeled aspects of Veterans Electric's proposal as "weaknesses." Finally, Plaintiff asserts that DVA failed to explain how its adjectival assessments of each proposal translated into a ranking system used to construct the competitive range.

### Procedural History

Veterans Electric first protested this procurement before the Government Accountability Office ("GAO") in October 2018. AR 2189-2208. GAO dismissed Veterans Electric's protest approximately one month later on procedural grounds without reaching the merits. AR 3531.

On December 12, 2018, Veterans Electric filed its complaint in this Court. The parties completed briefing on March 8, 2019, and the Court held oral argument on March 20, 2019. DVA voluntarily stayed its procurement while the Court considered Veterans Electric's protest.

---

[2] Two offerors submitted facially incomplete proposals and were excluded without consideration. AR 2121. DVA eliminated the remaining five offerors after evaluating their proposals.

Discussion

I. Standard of Review

   A. Courts Are Highly Deferential to the Agency's Determination.

The Tucker Act grants this Court subject-matter jurisdiction over bid protests. 28 U.S.C. § 1491(b)(1) (2012). In a bid protest, the Court reviews an agency's decision pursuant to the standards set out in the Administrative Procedure Act ("APA"). 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706. The APA provides that "a reviewing court shall set aside the agency action if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1350–51 (Fed. Cir. 2004). An agency's decision does not violate the APA if the agency "provided a coherent and reasonable explanation of its exercise of discretion." Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332–33 (Fed. Cir. 2001). Further, an agency must articulate a "rational connection between the facts found and the choice made." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (citation omitted). The Court's review is "highly deferential" to the agency as long as the agency has rationally explained its award decision. Bannum, Inc. v. United States, 91 Fed. Cl. 160, 169–70 (2009).

Even if the agency acted without a rational basis, the Court cannot grant relief unless the agency's action prejudiced the protestor. Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005). Erroneous agency action prejudices a protestor if, but for the agency's error, there was a "substantial chance" that the agency would have awarded the contract to the protestor. Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (internal citation omitted); see also Bannum, 404 F.3d at 1353.

   B. The Federal Acquisition Regulation ("FAR") Permits the Agency to Establish a Competitive Range.

In conducting a procurement, the FAR permits a contracting officer to set a competitive range, generally comprised of the highest-rated offerors. See FAR § 15.306(c). Agencies possess "broad discretion in determining the competitive range." Birch & Davis Int'l, Inc. v. Christopher, 4 F.3d 970, 973 (Fed. Cir. 1993). Due to this broad discretion, review of an agency's competitive range decision is limited to whether it was reasonable, consistent with the stated evaluation criteria, and compliant with the applicable statutory and regulatory requirements. See Pitney Bowes Gov't Solutions, Inc. v. United States, 94 Fed. Cl. 1, 11 (2010). Courts defer to the agency's competitive range evaluation unless the agency's determination is "clearly unreasonable." Id.

4

II.   DVA's Evaluation of the Technical Factors in Veterans Electric's Proposal Was Not Arbitrary.[3]

The solicitation requested offerors to submit a 25-page proposal outlining the offeror's company experience, project management staffing, and safety plan.  AR 102.  DVA did not consider conclusory statements or unsupported assurances regarding the offeror's ability to meet the contract requirements.  Id.  The solicitation warned offerors that "[f]ailure to provide a technical proposal in accordance with the solicitation instructions may render an Offeror's proposal incomplete and ineligible for award."  AR 102.

A.  Company Experience

The Company Experience factor aimed to "assess an offeror's experience in performing construction work in a health care environment."  AR 106.  The solicitation provided that DVA would evaluate the "breadth and depth" of "each offeror's company experience in providing construction services which are similar in nature of work which could appropriately be awarded as an order under this [contract] as defined for this requirement."  Id.  In crafting their proposals, the solicitation asked offerors to "include detail about the company's experience in providing construction services, which are of similar nature to the work to be performed under the requirement described in the solicitation."  AR 102.

The SSEB rated Veterans Electric's company experience as "marginal."  AR 2132-33.  That rating was not made arbitrarily.  Veterans Electric's proposal simply listed "satisfied customers" without any additional information from which to discern the nature of the projects or the extent of work performed.  AR 1940.  This listing does not provide the level of detail the solicitation called for and, as DVA points out, made it difficult to properly evaluate the company's breadth and depth of experience.  AR 2133.  Moreover, Veterans Electric's assertion regarding its "satisfied customers" appears to be the sort of conclusory statement that the agency would not consider.  Veterans Electric thus failed to supply sufficient details to assure the SSEB that Veterans Electric could perform under the contract; the SSEB rightly found these omissions to be shortcomings in Veterans Electric's proposal and rated them accordingly.

Review of competitors' offers validates the agency's marginal rating.  Offeror number 3, for example, submitted a list of projects like Veterans Electric.  AR 1190-95; 2003.  But unlike Plaintiff's submission, offeror 3 included additional explanations of its projects for which it received a "good" rating.  Id.  More detail translated into a higher rating—such an assessment is patently not unreasonable.

---

[3] DVA rated Veterans Electric's past performance as posing "low performance risk" and its price as both realistic and reasonable.  Veterans Electric does not challenge those evaluations.

5

B. Project Management

The solicitation required offerors to "include detailed information on the proposed management team" and supply "resumes for the Project Manager, Site Superintendent, Quality Control Manager, and Safety Officer." AR 102. DVA evaluated resumes based "on the level and type of experience and education" and each individual's experience "on projects similar in nature of work which could appropriately be awarded as an order under this [contract]." AR 106.

The SSEB gave Veterans Electric's project management section a "marginal" rating. AR 2133. Veterans Electric provided a list of its management team members with an accompanying list of these individuals' prior jobs, notable projects, and skills. AR 1943-44. However, that list again lacked the detailed information requested in the solicitation. Each employee's overview showed job titles and durations but not places of employment. Plaintiff listed each individual's "notable projects" but did not indicate the kind of projects, the work performed on each project, or these projects' relationship to the present contract. It is no surprise that the SSEB viewed Veterans Electric's failure to supply the detailed information it requested on employees' skills and experience as troublesome, considering the solicitation's express position that it would evaluate the management team based on those individuals' history of performing similar work.

Other offeror's proposals confirm that the SSEB did not act arbitrarily in assigning Veterans Electric's rating. Offeror number 3's submission more extensively outlined each relevant employee's work history, skills, roles, and responsibilities for which it received a "good" rating. AR 2027, 1197-1209. Again, it is entirely reasonable that more detail yielded a higher rating.

C. Safety Plan

The solicitation instructed each offeror to detail its familiarity with and its policies and practices for ensuring compliance with OSHA construction safety requirements. AR 102. Safety plans must also outline work activity safety measures, emergency response measures, a safety reporting plan, OSHA training course certifications, and the offeror's plan for enforcing and monitoring its safety plan. AR 106.

Veterans Electric defends its plan despite the SSEB's "unsatisfactory" rating. However, a review of the administrative record shows that this rating was reasonable. Veterans Electric provided a general workplace safety overview and basic first aid which failed to address work activity safety measures, safety reporting, training requirements or training monitoring and enforcement as the solicitation requested. AR 106, 1945-48, 2066. Again, Veterans Electric's poor rating is consistent with its competitors' evaluations. For example, offeror number 11 provided similarly limited detail but better addressed the safety

plan factors outlined in the solicitation. Its more thorough proposal earned that offeror a "good" rating. AR 1716-1718; 2063.

Veterans Electric's primary contention here is that any shortcoming in its safety plan is attributable to ambiguity in the solicitation. Plaintiff adds that the technical proposal's short 25-page limit compounded this confusion; it explained that full safety plans often cover over 200 pages.[4] As a threshold matter, to the extent that Veterans Electric raises a defect in the solicitation, the time for that challenge has long since passed. See, e.g., Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1315 (Fed. Cir. 2007) (requiring offerors to challenge any purported solicitation defect before submitting proposals).

Turning to the proposal itself, it is curious that Veterans Electric complains about the 25-page limit. After accounting for a considerable amount of unused space on each page and removing pages which did not count towards the cap, Veterans Electric's technical factor proposal is approximately 10 pages long. The solicitation set forth criteria which DVA believed to be especially relevant to understanding an offeror's safety experience, policies, and practices. As explained above, Veterans Electric's brief recitation did not adequately address the safety plan features that the solicitation outlined. The agency, therefore, could not properly evaluate Veterans Electric's safety experience, policies, and procedures which reasonably translated into a poor rating.[5]

### D. Veterans Electric's Additional Challenges are Unsupported.

Veterans Electric advances two additional arguments. First, it contends that DVA and the SSEB unfairly evaluated Veterans Electric's proposal based on undisclosed criteria not included in the solicitation. Second, it maintains that the purported shortcomings in its proposal were not weaknesses according to that term's true definition.

---

[4] Plaintiff adds that DVA wrongly criticized Veterans Electric for providing no information on its employees' OSHA certifications, when its proposal indicates that all supervisors have performed the OSHA 30-hour construction safety program. AR 1943-44. However, Veterans Electric included that information in the project management section, not in Veterans Electric's safety plan. As discussed herein, offerors bear the burden of submitting technically accurate proposals. Even so, this confusion would not have prejudiced Veterans Electric because its overall proposal was seriously limited.

[5] Veterans Electrics makes a second criticism of the page limit. It maintains that a short summary of an offeror's safety plan is irrelevant because it provides no insight into the actual final plan. Veterans Electric claims that this factor is therefore an invalid evaluation criterion. The solicitation asked for offerors to touch on certain key safety policies and procedures as a basis for evaluating the offeror's general safety measures and experience. It is difficult to see how this could be irrelevant.

1. The Agency Did Not Use Undisclosed Evaluation Criteria.

   a. The Solicitation's Plain Language Dispenses with Several of Plaintiff's Contentions.

DVA explained that Veterans Electric failed to include information on its "Project Manager's and Site Superintendent's ability to coordinate multiple contract tasks" and further, that "no durations, magnitude, descriptions, or scope of the projects were provided in order to effectively evaluate company experience." AR 2132-33. Veterans Electric argues that DVA unfairly measured its proposal against these two factors which were not outlined in the solicitation.

Plaintiff need only look to the text to see its error. The solicitation plainly provides that the "[e]valuation of the Project Manager and Site Superintendent will include . . . the ability to coordinate multiple contract tasks." AR106. The solicitation could not be clearer. Moreover, the solicitation asks for "detail about the company's experience" so that DVA can evaluate the "breadth and depth" of "each offeror's company experience in providing [similar] construction services." Id. "Magnitude" and "scope" are closely related to "breadth." See Breadth, MERRIAM-WEBSTER, https://www.merriam-webster.com/thesaurus/breadth. Duration, magnitude, and scope are not separate criteria, but rather a restatement of the detail, breadth, and depth standards.

   b. The Rest of Plaintiff's Arguments Stem from a General Failure to Include Detailed Information in Its Proposal.

Generally, the remainder of what Veterans Electric alleges to be undisclosed criteria are instead the agency's reasonable assessments based on Plaintiff's limited submission. The Court will address each in turn.

Veterans Electric takes issue with the assessments that its "subcontractor relationships, team approach, or prequalification of subcontractor process" did not touch on Veterans Electric's "ability to obtain and retain quality subcontractors." AR 2132. The solicitation directed offerors to provide sufficient detail on its industry-specific projects so that the agency could review the "breadth and depth" of an offeror's experience. AR 102, 106. Put differently, it requested that offerors paint a complete picture of their company's prior projects. As a solicitation for a construction project, it should be no surprise that interactions with subcontractors could be part of this picture.

Plaintiff next challenges the SSEB's conclusion that Veterans Electric's decision to designate a single employee to act as both the Site Superintendent and Quality Control Manager "poses a higher risk of unsuccessful performance by increasing the workload of a single person." AR 2047. Plaintiff gave no explanation for its decision nor did it provide any assurance that this employee could effectively perform two core functions. AR 1943.

The SSEB therefore rationally concluded that this consolidation could result in an unmanageable high work load for one employee, which could impact overall contract performance.

Veterans Electric then objects to the SSEB's assessment that "the Quality Control Manager['s] . . . relevant QCM certificates/training" were lacking. The solicitation provides that "the resumes for the . . . Quality Control Manager . . . will be evaluated on the level and type of experience and education." AR 106. Certificates and training are a logical, non-arbitrary measure of experience and education.

Lastly, DVA's assessments that Veterans Electric's proposal lacked "an organizational chart, narrative, or additional information to provide information about your firm's approach to project management," and that its "Safety Officer does not appear to have any specific or relevant Safety Professional Certificates (Certified Safety Professional/Certified Health and Safety Technician)" are not undisclosed criteria. AR 2133. Rather, they are shortcomings DVA identified which speak to the general dearth of information in Plaintiff's proposal, regardless of the form in which it chose to present that information.

In sum, Plaintiff does not identify undisclosed criteria. The agency did not act irrationally in making its aforementioned assessments.

2. The Agency Properly Assessed Weaknesses in Plaintiff's Offer.

Veterans Electric challenges DVA's use of the term "weakness" and adds that DVA labels its critiques of Plaintiff's proposal as weaknesses in a conclusory way. Veterans Electric also maintains that even if it did fail to follow the solicitation's terms, such failure cannot automatically be labeled as a weakness if it has no bearing on contract performance.

The solicitation defines a "weakness" "as a flaw in the proposal that increases the risk of unsuccessful contract performance." AR 18. It defines a "significant weakness" "as a flaw in the proposal that appreciably increases the risk of unsuccessful contract performance." AR 18. The solicitation's definition tracks that set out in Standard Commc'ns v. United States, 101 Fed. Cl. 723, 742 (2011) (a significant weakness is "a flaw that appreciably increases the risk of unsuccessful contract performance" (quoting FAR § 15.001)).

In the solicitation, DVA requested specific details on company experience, project management, and safety plans from which it could evaluate offeror competency to complete the work called for in this contract. Proposals were therefore required to include "sufficient detail" upon which the agency can assess whether the offeror could perform the services requested. Mercom, Inc. v. United States, 131 Fed. Cl. 32, 40 (2017). Veterans Electric's proposal included no such detail. Its scant offer failed to show DVA that it could

perform the required services, a flaw which DVA reasonably assessed would increase the risk of unsuccessful contract performance. Accordingly, DVA did not arbitrarily determine that the little information Veterans Electric provided was insufficient to assure the agency that the contract's requirements would be met.

Veterans Electric adds that its failure to follow the solicitation's terms should not be considered a weakness without some tie to its ability to perform under the contract. Pl. Motion at 23. The solicitation's requirements are not meaningless. Rather, successful proposals must supply the required information and demonstrate the offeror's capabilities to the procuring agency. See, e.g., Red River Holdings, LLC v. United States, 87 Fed. Cl. 768, 787 (2009) ("Proposals must be complete and conform to the Solicitation."); Orion Tech. v. United States, 102 Fed. Cl. 218, 218 n. 20 (2011). Veterans Electric did not address many of the solicitation's requirements. Its incomplete recitation of its company experience, project management, and safety plan lacked the requisite detail to inspire DVA's and the SSEB's confidence in Veterans Electric's capacity to perform the work required.

  III. DVA's Decision to Exclude Veterans Electric from the Competitive Range Was Not Arbitrary.

    A. The Solicitation Sufficiently Outlined Each Factor's Weight.

Veterans Electric complains that DVA "[f]ailed to establish the relative importance of factors and subfactors" and how the interplay of these factors resulted in a final ranking. Solicitations must "indicate the relative weights of evaluation factors" but need not supply a "precise quantitative comparison" in assessing proposals. Firstline Transp. Sec., Inc. v. United States, 100 Fed. Cl. 359, 393 (2011).

The solicitation explains that "[a]ll non-price factors are of equal importance and, when combined, are significantly more important than price." AR 105. Contrary to Plaintiff's assertion, this language establishes the relative importance of each factor in evaluating proposals. Agencies may use this adjectival system to then rank proposals and need not supply any answer key, conversion chart or any similar metric to show how those ratings translated into a final ranking. The administrative record reflects that DVA consistently applied its stated evaluation criteria and that other offerors submitted comparatively superior offers which warranted inclusion in the competitive range.

### 1. Veterans Electric Submitted a Comparably Inferior Proposal.

Veterans Electric's technical proposal received the lowest ratings given to any submission across all technical factors.[6] AR 2123. Plaintiff offered the seventh lowest price which DVA considered both realistic and reasonable, and received a "low risk" past performance rating. Taken together, DVA determined that Veterans Electric submitted the tenth best proposal out of twelve considered. AR 2125, 2133, 2517. Veterans Electric's poor technical factor ratings, combined with the heavy weight placed on these technical factors, make it unsurprising that DVA excluded Veterans Electric from the competitive range.

Veterans Electric attempts to save its proposal by contending that DVA's analysis of the technical factors measured the proposal's form and style over its content. Pl. Motion at 20. Veterans Electric also points to DVA's failure to consider relevant material that Veterans Electric included in the wrong section of its proposal in support of its position that DVA's evaluation was overly technical. Plaintiff maintains that the evaluation process was, therefore, "better described as a writing contest than an evaluation of contractor responsibility." Pl. Motion at 20; see also Pl. Motion at 26 (comparing the solicitation to "a high school homework assignment to write an English essay."). However, the more apt schoolhouse analogy is to that of a student submitting a paragraph on A Tale of Two Cities after being asked to write a paper on Great Expectations; its submission simply missed the mark.

Both the law and the solicitation are clear that the onus is not on the agency to cobble together a compliant offer from an offeror's submission. See ST Net, Inc. v. United States, 112 Fed. Cl. 99, 110 (2013) ("Indeed, this court has held that an agency is not required to sift through a proposal in order to identify information that the offeror failed to include in the correct place."); Prescient, Inc. v. United States, 125 Fed. Cl. 475, 491 (2016) ("[I]t was not the responsibility of the agency to sift through [a] proposal and piece together a compliant offer. Rather, it is well established that all offerors . . . are expected to demonstrate their capabilities in their proposals." (quotations omitted) (alteration in original)); AR 102 ("Failure to provide a technical proposal in accordance with the solicitation instructions may render an Offeror's proposal incomplete and ineligible for award."). Rather, offerors are responsible for submitting complete and thorough proposals that address the solicitation's requirements and demonstrate their capacity to perform under the contract. Red River Holdings, 87 Fed. Cl. at 787.

Veterans Electric's deficiencies were, therefore, not up to the agency to correct. Veterans Electric's lower rating was not the result of a mere technicality, rather it was due

---

[6] Veterans Electric received "marginal" ratings for the company experience and project management components of its proposal. AR 2123. Its safety plan was "unsatisfactory." Id.

11

to its sparse and incorrectly compiled technical proposal.[7]  Accordingly, DVA's exclusion of Veterans Electric's "less-than-thorough proposal" from the competitive range was not arbitrary.  See PGBA, LLC v. United States, 60 Fed. Cl. 196, 209-210 (2004).

### 2.  DVA Did Not Play Favorites Among Offerors.

Veterans Electric points to DVA's treatment of two other offerors—offeror number 2 and offeror number 5—to highlight DVA's purportedly illogical rankings.  It claims that DVA afforded these offerors improper additional opportunities to discuss their proposals and assigned unduly favorable overall rankings.

Veterans Electric's criticisms stem from its misapplication of the solicitation's weighting system and of the FAR.  FAR § 15.306(b)(1)(i) permits agencies to request that offerors "address adverse past performance information to which an offeror has not had a prior opportunity to respond."  Moreover, the solicitation provides that all non-price factors are weighed equally and, taken together, are much more significant than price.  AR 105.

DVA contacted offeror number 5 pursuant to section 15.306(b)(1)(i) to better understand that offeror's past performance issues.  Offeror number 5 chose not to respond and DVA eliminated it from the competitive range accordingly.  AR 2136.  DVA's behavior comported with the applicable legal standards and was not irrational as Plaintiff contends.

Plaintiff then offers a "head-to-head" comparison with offeror number 2 to show arbitrary treatment.  DVA rated that offeror's company experience as "satisfactory," its project management as "good," and its safety plan as "marginal."  Its past performance posed a "moderate risk."  That offeror's price was realistic but not reasonable.  Like with offeror number 5, DVA contacted offeror number 2 to address past performance apprehensions.  Offeror number 2 responded and satisfied DVA's concerns.  The contracting officer also concluded that offeror number 2's high price could be resolved through subsequent discussions.  AR 2134.

Veterans Electric appears surprised that DVA included offeror number 2 in the competitive range but excluded Veterans Electric.  The Court does not share this same surprise.  Veterans Electric supplied superior past performance and a more competitive price but received lower (and, in some instances, substantially lower) ratings in every other category. Based on the equal weight of each non-price factor, offeror number 2's uniformly more attractive technical capabilities, the non-price factors' substantial weight compared to price, and offeror number 2's satisfactory explanation regarding its past performance, offeror number 2's higher ranking was warranted.

---

[7] Moreover, the agency need not give the offeror the opportunity to rewrite its proposal.  See Orion Tech., 102 Fed. Cl. at 218.

B.  DVA Considered Price Appropriately.

Veterans Electric argues that the solicitation's price evaluation on realism and reasonableness grounds caused the agency to lose sight of the most important price factor, the actual price quoted. Plaintiff submitted the seventh lowest price which DVA deemed to be both realistic and reasonable. Veterans Electric contends that DVA (1) did not appropriately factor in that price into Veterans Electric's overall evaluation and (2) failed to perform a proper best-value tradeoff to justify including offerors with higher prices than Veterans Electric in the competitive range.

First, Veterans Electric's position regarding DVA's failure to engage in a best value analysis conflates a competitive range determination with an award decision. The solicitation outlined that this procurement would proceed in successive stages. First, DVA would establish a competitive range. AR 107-08. FAR § 15.306(c)(1) explains that "[a]gencies shall . . . establish a competitive range comprised of all of the most highly rated proposals" after reviewing "the ratings of each proposal against all evaluation criteria." The FAR permits further reduction to the number of proposals selected to the competitive range "for purposes of efficiency." Id. Then, DVA will make its award after performing a best-value tradeoff analysis with offerors in the competitive range and holding discussions with those offerors. AR 105, 108.

The agency was therefore not required to perform a best-value analysis at this stage of the procurement as Veterans Electric suggests. In making its competitive range determination, DVA need only identify "the most highly rated proposals" based on the solicitation's evaluation criteria. DVA did just that: it followed the factor analysis outlined in the solicitation to rate proposals in a rational, non-arbitrary way and from that analysis established a competitive range comprised of the highest rated offerors. Lastly, the solicitation contemplated future discussions, including price negotiations, with members of the competitive range. As a result, DVA could negotiate higher priced offers down into what DVA deems a more reasonable range. Inclusion of higher priced offerors was, therefore, not arbitrary or irrational but rather followed the terms of the solicitation and the FAR.

Second, DVA did evaluate price; it considered each proposal's price realism and reasonableness. At this stage, DVA was not required to engage in the same price and value tradeoff analysis required to support an award decision. Accordingly, DVA sufficiently accounted for each offeror's price in making its overall assessment of which offers were most competitive.[8]

---

[8] Veterans Electric is also incorrect that DVA did not account for the actual price quoted itself. Reasonableness measures whether the offeror's price quoted is at or around fair market value. AR 107. That factor addressed the actual price.

13

The administrative record supports DVA's assessment that Veterans Electric's proposal "contained multiple deficiencies and significant weaknesses and lacked depth and substance." DVA's choice to exclude Veterans Electric from the competitive range was not arbitrary.

<u>Conclusion</u>

In conclusion, the Court DENIES Veterans Electric's Motion for Judgment on the Administrative Record and GRANTS the Government's Cross-Motion for Judgment on the Administrative Record. The Clerk shall enter judgment in favor of the Government. No costs. Plaintiff Veterans Electric, LLC's complaint is dismissed with prejudice.

IT IS SO ORDERED.

<u>s/ Thomas C. Wheeler</u>
THOMAS C. WHEELER
Judge